We're ready to call the case 431East Palisade Avenue, Real Estate LLC v. City of Englewood, City Council of Englewood Um, Mr. Antonelli, if you'd formally introduce yourself for the record and request any rebuttal time you want Uh, thank you very much, good morning, my name is Daniel Antonelli from the law firm of Antonelli Cantor on behalf of Appellants City of Englewood and City Council of Englewood And, uh, at this time I would like to request three minutes for a rebuttal Done Go ahead, you may proceed Oh, thank you very much So, obviously everyone has read the submissions, I will try not to repeat myself But I would like to emphasize a few things for the court, and I believe worth pointing out a few things Um, so we are before this court, uh, which started with Palisade's order to show cause seeking extraordinary relief in the form of a preliminary injunction, uh, preventing the city from enforcing its zoning codes, specifically the RAAA zone The district court held that the city's zoning ordinance discriminates on its face, uh, but acknowledged that the city's zoning ordinances do not expressly, uh, expressly state that assisted living facilities are prohibited from districts primarily designated as residential And further stated that there's no language explicitly stating that assisted living facilities are prohibited to the R.M. district Mr. Antonelli, can you hear me? Yes Yeah, okay, uh, this is going to be a little awkward on the phone, especially, you know, if we're in person, you can see body language You can see somebody leaning into their microphone, wanting to ask a question Without those, the benefit of the visual cues, it might be a little, uh, harder, but, um Yes So, I want to ask whether when we're looking at this ordinance and trying to analyze it, uh, should we be looking just at the provisions that deal with the RAAA or are we looking at the entirety of the code? What's the city's position on that? Sure, the city's position on that, your honor, is that, uh, you look to the RAAA zone, uh, and that's what you would look to to determine whether or not there's any express discriminatory language because this is a facial challenge, um, and so therefore when you look at the RAAA zone, there is no express discriminatory language, um, that would obviously violate the FHA Um, and, you know, just because, perhaps, um, you know, language may be prohibitive doesn't automatically make it discriminatory Um, and in this case, with the RAAA They lean pretty heavily on that Montana case, the Montana Fair Housing versus City of Bozeman Correct Yeah, so, what's, what, why shouldn't we be The flaw in the reasoning there Sure, so, I believe this court should not rely upon the Bozeman case for a number of reasons Um, number one, it's obviously out of district Number two, though, I think what's important, your honor, in the City of Bozeman case They had a, um, an authorized usage section, I guess similar to a zoning code And within the chart, which is actually referenced in the case They specifically mentioned assisted living facilities as being excluded Um, in the residential districts there So, that court held that there's a facial challenge looking at the, the, the express words of the zoning code Um, we don't have that in this case So, when you look at the authorized usage sections, they specifically prohibit assisted living facilities In, I believe, the three or four residential districts in that code It seems like, um, assisted living, uh, is not specifically excluded and held But in, in practice, it certainly, the assisted living facility is And, in fact, isn't that exactly what happens to plaintiff in this case? Right, but, so, again, not to confuse prohibitive versus discriminatory In other words, without the express discriminatory language, there can't be a face challenge This, this assisted living facility is not being treated any differently than any other uses that are prohibited And, and that, that makes the difference here People without a, people without a handicap are treated similarly within the RAAA zone So, for example, um, uh, people without handicaps can't build multifamily housing Can't build congregate settings, can't do a variety of things So, so the ordinance is not treating the assisted living facility any differently than others Doesn't the zoning provision facially discriminate? That area is zoned specifically for single family, uh, dwellings And no one else apparently need apply, isn't that the case? No, because the, the, we're, in other words, anybody can make an application in the RAAA zone To build, for example, in this case, an assisted living facility Or if someone wanted to build a storage facility for some other type of development Anyone can make that application before the, the, the proper board You're saying that, you're suggesting a variance application? Well, I believe in this case, your honor, you know, what should have happened here is, yes The, the Palisades should have made application to the zoning board And sought a use variance as well as any other variance needed for the application Here, they, they sidestepped that, completely avoided making any sort of application And ran to court seeking extraordinary relief in the form of a preliminary injunction All right, their position, I think, is that such an application would have been completely futile I, I, sorry, could you repeat that? I didn't hear you Well, I understand their position to be that such an application, an application for a variance Would have been completely futile, it would have been rejected offhand So, so, there's certainly no record evidence before this court or the lower court that indicates that And any, any, any claims made by Palisades in that regard would simply be speculative You know, we, we obviously don't know what, what could have happened or could not have happened But at least in going through that process, they could also make their application for a reasonable accommodation So, and here, what's shocking is that the district court not only prohibited the city from enforcing its zoning code It also rubber-stamped their application to the point where the planning board, if it were to hear this application Could not question the size of the building, the square footage, and other related, you know, questions Concerning the application, drainage, environmental concerns It completely, essentially neutralized the planning board from doing anything other than rubber-stamping What the court had already done, which is, essentially became a super lanyard sport And if I can just add, when, when you look at the various cases which have been cited by both parties There's just obviously a disagreement as to interpretation and argument I would just like to point out a few things for the court The Hobsons case at a brick, in that case, there was a residential zone Which also listed uses and permitted uses, but not nursing homes as of right And in that case, the district court actually dismissed the intentional discrimination against brick Finding that the zoning ordinance was valid And in that case, there were 23 zoning districts Nursing homes were excluded from all 15 residential zones And they were only a permitted use in the hospital support zone Mr. Antonelli, I mean, is it the case that the ordinance here Specifically mentions assisted living facilities and limits them to the RIM zone? Right, in other words, it does It gives them preferential treatment in the RIM zone Which, in the Hobson case, they gave nursing homes preferential treatment in the hospital support zone All right, so if the ordinance as a whole says Yeah, assisted living facilities, you belong over there, that's where you go Don't go someplace else, go in the RIM zone If we look at the ordinance as a whole Is the implication then that it's facially discriminatory Because it's saying to assisted living facilities, people who need special care You're not welcome in these other places On its face, because of your disability, you only belong in the RIM zone I don't believe it does And again, because the focus needs to be on the express terms of the language And in this case, the RAAA zone And if anything Why don't we look at the ordinance as a whole, Mr. Antonelli? Why do we ignore the fact that Assisted living facilities are called out specifically in another portion of the ordinance And essentially told, this is where you belong The reason why is because when you look at a facial challenge The court is supposed to excise or remove the discriminatory language So, looking to the RIM zone Which gives preferential treatment to assisted living facilities What would this court excise from the RAAA zone The language that's discriminatory And if anything It really goes to an as applied challenge So, in this particular case The RAAA zone, as applied to Palisades Is discriminatory It's not a facial challenge Because there's simply no express terms in the RAAA zone That discriminates against assisted living facilities And that's the trouble here And I think the district court struggled with that issue as well But even the district court found that the ordinance on its face wasn't discriminatory Okay Judge Restrepo or Judge Fuentes Any other questions from you? Yes Where did the district court get it wrong then? I believe the district court got it wrong When it held That it looked at the motivation, if you will, of the city And found discriminatory motivation Acknowledging, though, in the first instance That it wasn't discriminatory language And that's where they got it wrong Isn't it discriminatory If you say that this is a single family dwelling district And that's all that can reside in that particular zone? Well, the RAAA zone does have single family Some other permitted uses But, again, we can't confuse what's prohibited To mean also discriminatory It's not one and the same Again, assisted living facilities Are not treated any differently than anybody else In the RAAA zone So, for example, as I used earlier Multi-family housing is prohibited Storage facilities are prohibited So the question really becomes Is the assisted living facilities being treated differently Than anybody else by the express terms The express language of the ordinance Okay, Judge Restrepo, anything? I have no questions All right, thank you, Mr. Antonelli Mr. Englert May it please the court My name is Roy Englert And I represent the affilies In light of the argument so far And I'd like to go straight to The discriminatory provisions of the ordinance And they can be found at pages 352, 361, and 435 to 436 Of the joint appendix At page 352 Your honors can see that the definition Of a one-family dwelling Expressly excludes any, quote, group home Or congregate living facility In which a person's continued occupancy Is dependent upon the payment Of a fixed rent or room charge On page 361 Let's stop right there, Mr. Englert And explain to us How that language Discriminates against Anybody, quote, because of, unquote, a handicap Your honor, I would respectfully quote This court's decision in Hobson's At page 1105 Where the court quoted the Sixth Circuit To the effect that the handicapped may have Little choice but to live in a commercial home If they desire to live in a residential neighborhood And I would add as well Did the district court in this case Do any analysis as to discrimination Tethered to a handicap? Absolutely, yes Where? Tell us where Sure Specific to a handicap is what I'm asking Sure Just give me a moment Page 23 of the appendix The court concludes plaintiffs are likely To succeed on the merits of their claim That the city's zoning ordinances Are discriminatory on their face Meaning that they treat the handicapped needing Congregate care differently from other individuals Because of their handicap That's a conclusion That's an assertion of a conclusion It's not an analysis Help us understand How the district court got to And how you get us to A statement that Blocking multi-family dwelling units Is discriminatory against Persons with handicaps Because of They're having a handicap That part of the analysis Is on pages 20 to 21 Of the district court's opinion, your honor And I'm not going to read the whole thing But a key sentence on page 20 Indeed the zoning ordinances Permit non-handicapped elderly And multi-residence dwellings In the Rim district But the handicapped elderly requiring congregate care Are not similarly treated That's an express analysis of discrimination There's more on page 21 With regard to the language of the ordinance Wait a second Mr. Engler Let's stay on that line Does the fact that the ordinance Says You can have nursing facilities In one place Mean that in any other place In the code Where it's not expressly said That they can exist That they're being discriminated against Yes, your honor All three of the provisions of the code That I want to call your attention to Are considered Because page 361 Shows where there is a prohibition Of anything except eight specific uses None of which could be an assisted living facility Pages 435 to 436 Permit the assisted living facility In the Rim district And this is important The city has said it wants to have a healthcare village That's also on page 435 It's fine to create a healthcare village Wait a second That's an as-applied issue Isn't it? If you want to get into whether they're bad people Or not and they're really trying to discriminate Then you've got to get into a factual record But at this juncture Your clients chose to make a facial challenge And we're just looking at the face of the ordinance Right? Yes, and your honor, if I may First of all, we're not saying anyone is a bad person Different treatment doesn't require Malign motives But I would invite the court To look at the opinion of the Tenth Circuit in a case out of Utah Called Van Goerter Which has been cited by this court With approval And Van Goerter explains Why disparate Treatment Not disparate impact Is the proper analysis in a case like this The The I'm sorry I've lost a note But I do invite Attention to the Van Goerter case Which explains why A case like this is best analyzed As a disparate treatment case Tell me what efforts You folks made to pursue a variance We made no efforts To pursue a variance But your honor, we spent two years Trying to get the city council to amend The code And the zoning officer Mr. Scott Participated in a hearing And this is in the record, and this is in the complaint In which he indicated Hostility to a zoning variance Isn't it a facial challenge? Isn't it appropriate for a municipality To make these kinds of distinctions That is to have different zones For different purposes And to have a zone that is solely for Single family living As well as having a zone for Let's say A residence for Assisted living, a separate zone No, your honor And again, I would point to page 1105 Of this court's Hobson's decision Where the court said That treating nursing homes as out of place In residential zones Is precisely the type of land use planning That the FHRAA was enacted To prevent, and if necessary Overrule Well, it doesn't say nursing homes Are allowed here It says multi-unit Housing is not allowed And if all multi-unit Housing is disallowed How can you make the argument That this is aimed at the handicapped And it's because of Their need for Special assisted living That they're being kept out When indeed all multi-unit family Housing is being kept out Two things, your honor One is that The assisted living Facilities are permitted in the rim zone And the city has defended Its choice to try to make people live in the rim zone As a result of trying to create a healthcare village But second This court in Hobson's At page 1105 This court in Lapid-Laurel at page 460 Both recognize that To be handicapped Often means little choice but to live In a commercial home So excluding Congregate living Arrangements from a particular district Is even Without the relegation to the rim District A disparate Treatment of the handicapped Well now there's where the rabbit Went in the hat right at the end Because it sounds exactly like A disparate impact argument until You get to that point It sounds like what you're saying is It's true that this applies To everybody across the board But it's going to hit These individuals most hard Now isn't that a statement of Disparate impact and not a statement of Disparate treatment because by its terms It's not disparate treatment It's everybody in a multi-family unit Is not allowed in here Not only people who need assisted No your honor I would respectfully Submit even without the Rim district provision And the provision for a healthcare village This would still be a good Treatment case but It's crisply clear from The city's Discussions of the healthcare village And the city's effort To place Assisted living facilities in the Rim district and only in the rim district That assisted living Facilities which is exactly what my clients Wish to build Are being treated differently From other Facilities and that Is all Treating differently You got to help I don't mean to be a But you keep Saying this Means they're treating our people Differently if By the terms of the ordinance itself No multi-unit Facility can be put in there No apartment building No swinging single scene Nothing can get in there Except single family dwellings How does that speak at all Question of whether Somebody's handicapped or not How do you get there Unless the way you get there Is to say yeah but outside The you know outside The four corners of the ordinance They said things that show they really are Handicapped unless you do that How do you get From within the four corners of the Document that is the ordinance Where you want to get Within the four corners of the document Please look at pages 435 To 436 of the joint appendix Which is the definition of the Rim district which includes Assisted living and says why Because the city wishes to create a healthcare Village you can also look At the procedural history recited In the complaint which Shows that my client Did work with the city for two years To try to get it to permit this Use in the RAAA Zone and Because of the placement In the rim zone and because Of the express prohibition on Multi-family units in the RAAA zone my Client did not get anywhere after two years of effort Okay Is working with the city Different than pursuing a variance Yes your honor for this reason We work with the city To try to get the Discriminatory zoning ordinance Itself changed which is a job To the city council We did not work With the zoning officials To try to get a variance The reasons that are explained In the complaint During appendix 71 And I just point the court Two paragraphs 106 and 107 Of the complaint which do explain the difference Okay May I Just a thought Is it your position sir that a Municipality Cannot have a zone Strictly for single-family Dwellings that is to the exclusion Of multi-unit dwelling Is that your position Yes it is your honor but even If I'm wrong about that The relegation of assisted living Facilities to the rim Zone would still make this A different case but yes that is my position Your honor and I believe it is squarely supported by the Decision against the township Of brick in the hobsons case And especially pages 1105 to 1106 about the opinion I suspect that if you're right It's going to cause an upheaval In many communities in New Jersey Because there are precisely that Many many Ordinances restricting Areas Solely to single-family dwellings Well a couple of observations About that upheaval your honor One only if there is An application by somebody Or a desire by somebody to build A facility like my clients in one of those Districts so anything happens Second with respect The 1988 amendments to the Fair housing act were intended to cause An upheaval in local learning practices Because through Without any malicious Intent a lot of Zoning practices excluded Handicapped people And this is pointed out in the house report At pages 18 and 24 Which has been quoted by this court many times And quoted by other courts of appeals many times So your position Essentially is Any district that's limited To single-family dwellings Is per se Aimed at Discriminating against people with handicaps Therefore under the FHA It's because of their Handicaps that All these different Communities across the state of New Jersey Have those Provisions And they're all unlawful FHA FHA meant to kick out To the curb all single-family Dwelling zoned ordinances Your Honor yes although The only thing I would quibble With is the words aimed at A big point of the FHA is People without aiming at handicapped people Have often enacted zoning ordinances That treat handicapped people differently But I can't emphasize enough that In this case we do have the Food assisted living facilities If I may make a last point your honor The existence of The RIM district the statement that This is where it would Be good for you to be Is all by itself by Necessary negative implication A statement that you will never be Allowed any place else No but we have the Combination in this case of the Prohibition on page 352 and 361 And the authorization on pages 435 and 436 in the RIM district And the city's explanation That it's trying to create a healthcare village That collection of Factors shows that the City here without necessarily Having any malicious intent Is trying to Push handicapped people Not to live where they  And a major purpose Of the Fair Housing Act was as Judge To invalidate land use regulations That limit the ability of handicapped Individuals to live in the residence of their choice In the community which is language From Hobson's which in turn was quoting The house report If I may make one last point your honor Yes sorry Could you give me an idea of the structure that you have in mind For this For In this single family dwelling area It's a beautiful Two door house that fits right in with the residential Neighborhood it's a three story Structure My client submitted many many Many drawings and plans To the city council They're all attached to the Hurton Declaration In the record below It is our desire to fit in with the residential Character of the facility not to Thumb our nose at that The last point I'm sorry your honor Go ahead Mr. Engler we'll give you a moment Just the very last point I was Hoping to make This is an appeal from a preliminary injunction And there are two major implications Of that One is the standard of review is abuse of discretion And another is the record is complete As far as the preliminary injunction is concerned If the city has new evidence For arguments It can put them before Judge Martinotti In the permanent injunction procedure And it also can take them But I take their point to be That there doesn't need to be any evidence In fact the problem here is That you're trying to rely on stuff outside the ordinance And that what we've got here Is a facial challenge And that's that There's no need for any other evidence And that on a question of Reviewing a preliminary injunction The overall issue is whether The description was abused But the legal error is by definition An abuse of discretion That's how I hear their argument But we'll let Mr. Antonelli Make his points May I respond to that Your Honor? Sure Okay Everything your Honor said is correct of course But all we had to show at this stage Was not that we will prevail on the merit The likelihood, merely a likelihood Which as this court's unboxing Our opinion says Doesn't even mean more than 50-50 Thank you Thank you Mr. Antonelli Thank you your Honor So just a couple points I'd like to make I've listened and you know We get here by way of an order to show cause And a preliminary injunction No depositions have been taken No discovery has been taken But I do agree As to the facial challenge All we need to look at is the ordinance We don't need discovery We don't need depositions To determine whether or not On it's face it's discriminatory Mr. Antonelli I need you to Specifically respond To Mr. Englert's assertion That the existence of the Rim District And the statement in the ordinance That this is Where the city Wants assisted living To be built Is a In and of itself Something that has to be Looked at in conjunction with the RAAA And shows The discrimination on account of Handicap So again When you look at the Enabling legislation for the Rim District it's a host of Uses there It's not just Targeted or specific to Assisted living Facilities You know under the MLUL A municipality Has the right to regulate Land uses And here on this Sparse record If there's discriminatory intent Well no one's Had their deposition taken No one's had any discovery exchange Other than what the Enabling legislation says And again I think the focus Is not on that Because it has to Come back to the RAAA zone You know The RIM zone You know conversely had the city Not amended its zoning code in 2015 to allow Assisted living facilities in the RIM zone as of right We don't have the Facial challenge That doesn't make sense to me So the penalize because they took steps In 2014 to give preferential Treatment to assisted living facilities And had they done nothing It wouldn't be before the court So again I think the right Focus is back to the RAAA Zone and Because of the handicap Are they being treated differently I would submit that they're not Okay Questions from Judge Restrepo or Judge Fuentes None from me Okay Well why don't you address Why this Handicap Structure can't be put Into the single Family Explain why it can't be Yes The argument I apologize for the interruption There's a message playing in the court room If you could just hold for a moment please March 30th Please exit the building Immediately Attention Can I have your attention Please The James Byrne Courthouse is now Closed until Monday March 30th Please exit the building Immediately Attention Can I have your Attention please The James Byrne Courthouse is now Closed until Monday March 30th Please exit the building Immediately March 30th Please exit the building Immediately March 30th Please exit the building Immediately The James Byrne Courthouse is now Closed until Monday March 30th Please exit the building Immediately   Immediately March 30th Please exit the building Immediately March 30th Please exit the building Let's not forget again In focusing on the express language Of the RAAA zone A developer wishing to build a 30 unit apartment Building would have To follow the same process They are prohibited from Doing that in the single family zone Unless they apply for A use variance so again The city is not treating Palace aides Any differently than Someone else seeking to do A similar use because of a handicap Alright so the process is the same Whether it's for assisted living or For a Living structure Yeah multi housing Correct Thank you Thank you very much Mr. Angler Appreciate everybody's arguments We've got the matter under advisement